UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROBERT M. SAPP,

    Plaintiff,

    v.

K-1 CORPORATION., a Japanese corporation, and SADAHARU TANIKAWA, a citizen or subject of Japan,

    Defendants.

CASE NO. C06-1791-JCC

ORDER DENYING PRELIMINARY INJUNCTION

This matter comes before the Court on Plaintiff's Motion for Preliminary Injunction (Dkt. No. 4) as amended by Plaintiff's Amended Motion for Preliminary Injunction (Dkt. No. 10). After considering the parties' submissions regarding the motion and determining that oral argument is not necessary, the Court hereby rules as follows.

I.    **BACKGROUND AND FACTS**[1]

Plaintiff is a professional mixed martial artist, kickboxer and pro wrestler. He turned to this career

---

[1] For purposes of this motion for a preliminary injunction, "[t]he district court is not required to make any binding findings of fact; it need only find probabilities that the necessary facts can be proved." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1423 (9th Cir. 1984). Accordingly, the facts discussed herein are those the Court finds could probably be proven at trial.

ORDER DENYING PRELIMINARY INJUNCTION – 1

after an injury ended his previous NFL football career in the late 1990s. (First Sapp Decl. 2 (Dkt. No. 2).) Plaintiff has had significant success at these sports, and has attained substantial notoriety worldwide. (*Id.* at 1.) In the instant dispute, Plaintiff seeks a preliminary injunction allowing him to participate in pro wrestling, kickboxing, and mixed martial arts events without the approval of Defendant K-1 Corporation, despite the existence of a contractual exclusivity agreement. (Pl.'s Am. Mot. for Prelim. Inj. 1.)

Starting in 2002, Defendant K-1, a prominent organization in the world of professional kickboxing and martial arts, began working with Plaintiff to arrange his participation in several fights in Japan. (First Sapp Decl. 3.) Though Plaintiff was based out of Seattle, Defendant K-1 flew him to Japan on several occasions to participate in these events. (*Id.*) In early 2003, Plaintiff told Defendant K-1 that he was uncomfortable continuing to operate without a written contract "given the nature of the sport and the large amounts of money involved." (*Id.* at 3.) In response, Defendant K-1 drafted the Exclusive Management Agreement (First Sapp Decl. Ex. 1) and Fighting Agreement (First Sapp Decl. Ex. 2) which are the subjects of this litigation.

It is uncontested that the parties negotiated portions of the contract over a six month period. (Ishii Decl 3; Third Sapp Decl. 4 (Dkt. No. 25).) While Plaintiff agrees that certain terms of the contract were negotiated over that time, he claims that the negotiations focused on issues such as "fight money, bonuses, rent, and other benefits," that such negotiations were conducted without passing the contract documents back and forth, and that he was not aware for the vast majority of that time of the existence of a forum-selection provision. (Third Sapp Decl. 4.) Plaintiff and Defendant K-1 signed the contracts in Tokyo on June 25, 2003 in what Plaintiff characterizes as an "extravagant" affair that was videotaped and photographed before a large number of people. (First Sapp Decl. 3-4.)

The Exclusive Management Agreement contained the following provision:

> **Article 20.   GOVERNING LAW AND JURISDICTION**
>
> 20.1   This Agreement shall be governed by and construed in accordance with the laws of Japan.

ORDER DENYING PRELIMINARY INJUNCTION – 2

> 20.2 All disputes, controversies or differences which may arise between the parties hereto out of, in relation to or in connection with this Agreement, or for the breach hereof, shall be subject to the exclusive jurisdiction of the Tokyo district Court of first Instance.

(Exclusive Management Agreement 10.) The Fighting Agreement contains identical language. (Fighting Agreement 13.) Though he asked several questions regarding his compensation package, Plaintiff contends that "K-1 did not advise or assist me with regard to [the] meaning" of this particular provision. (First Sapp Decl. 4.) Plaintiff states: "[w]hile I may have glanced at [the Governing Law and Jurisdiction provisions] during the signing event, I had no understanding of how those articles might have affected my rights." (*Id.*) Another provision of those contracts contained an exclusivity agreement, which prevents Plaintiff from fighting without prior approval of Defendant K-1. (Exclusive Management Agreement 1.)

After the signing of the contract, Plaintiff participated in a number of events organized by Defendant K-1. As of December 31, 2005, Plaintiff had fought in more than forty events at Defendant K-1's request. (First Sapp Decl. 5.)

In February of 2006, there was a dispute between Plaintiff and Defendant K-1 regarding an event hosted in Amsterdam that led to significant fallout between the parties. Plaintiff has not fought since December 31, 2005. (*Id.* at 2.) He contends that he is at a critical stage of his career where he is at peak performance and that there is a very limited time period in which he can continue to participate in the highest levels of the sport. (*Id.* at 1.) He argues that Defendants' invocation of the exclusivity agreement is having a substantial negative impact on his career. (Third Sapp Decl. 6.)

Defendant K-1 filed suit against Plaintiff in Tokyo for breach of contract on November 7, 2006. (Ishii Decl. 3.) Plaintiff filed the instant lawsuit in the Western District of Washington against Defendants on December 14, 2006 (Compl. 1 (Dkt. No. 1)) and filed this motion for a preliminary injunction on the same day (Pl.'s Mot. 1).

## II. ANALYSIS

The basic function of a preliminary injunction is to preserve the status quo pending a

ORDER DENYING PRELIMINARY INJUNCTION – 3

determination of the action on the merits. *Chalk v. U.S. Dist. Court Cent. Dist. of California,* 840 F.2d 701, 704 (9th Cir. 1988). Courts have generally required a movant to meet a higher degree of scrutiny where the movant seeks to alter rather than maintain the status quo, or where issuance of the injunction will provide the movant with substantially all of the relief that would be available after a trial on the merits. *Tom Doherty Associates, Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 33-34 (2nd Cir. 1995). Thus, Plaintiff's preliminary injunction faces a very high burden: He requests to alter the status quo by seeking relief from the exclusivity provision of his contract that is currently in place. Moreover, having the provision lifted pending the resolution of the merits will give him substantially all the relief he requests because any such trial is unlikely to be concluded much sooner than the exclusivity agreement's September 20, 2007 expiration date (Exclusive Management Agreement 1; Fighting Agreement 1.)

To obtain a preliminary injunction, Plaintiff must satisfy either the "traditional" or "alternative" test. Under the traditional test, the Court must find that: (1) the moving party will suffer irreparable injury if the relief is denied; (2) the moving party will probably prevail on the merits; (3) the balance of potential harm favors the moving party; and (4) the public interest favors granting relief. *Cassim v. Bowen*, 824 F.2d 791, 795 (9th Cir. 1987). The alternative test requires the Court to find: (1) a combination of probable success and the possibility of irreparable injury; or (2) that serious questions are raised and the balance of hardships tips sharply in his favor. *Id.* Under this last part of the alternative test, even if the balance of hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits. *Johnson v. Cal. State Bd. of Accountancy*, 72 F.3d 1427, 1430 (9th Cir. 1995). The two tests are not separate inquiries, but rather "extremes of a single continuum*." Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003). "[T]he less certain the district court is of the likelihood of success on the merits, the more plaintiffs must convince the district court that the public interest and balance of hardships tip in their favor." *Southwest Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003). At a bare minimum, Plaintiff must demonstrate a fair likelihood of success on the merits to obtain a preliminary

ORDER DENYING PRELIMINARY INJUNCTION – 4

injunction. *Johnson*, 72 F.3d at 1430.

Plaintiff's first potential impediment to success on the merits is the forum-selection clause requiring that all disputes be litigated in Japan. Plaintiff argues that even if the forum-selection clause precludes this Court from making a merits determination, the Court may nevertheless exercise its discretion to issue a preliminary injunction. He cites *Hendricks v. Bank of America, N.A.* for the proposition that courts can issue preliminary injunctions even when valid forum-selection clauses require that the merits of the dispute be litigated in another forum. 408 F.3d 1127, 1137 (9th Cir. 2005). *Hendricks*, however, does not stand for the broad proposition that courts can always grant any kind of preliminary injunctive relief they wish despite lack of proper venue. Rather it applies to the narrower class of "actions designed to *preserve assets* pending judgment on the merits in the contractually selected forum." *Id.* at 1138 (emphasis added). Whereas in *Hendricks* "the case before [the court was] not about the agreement itself or its validity," that is precisely what is at issue in the present matter. Here, Plaintiff is not merely seeking to secure assets prior to litigation on the merits, but rather seeks the very relief that a judgment on the merits in his favor would provide—relief from a contractual exclusivity agreement that prevents him from fighting without Defendants' consent. Accordingly, the preliminary injunction sought by Plaintiff in this case is improper if the forum-selection clause is valid.

Forum-selection clauses are presumptively valid. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). The Supreme Court has outlined only three situations in which Courts should not enforce such agreements: "first, if the inclusion of the clause in the agreement was the product of fraud or overreaching; second, if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced; and third, if enforcement would contravene a strong public policy of the forum in which suit is brought." *Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1998) (citing, *M/S Bremen*, 407 U.S. at 12-13, 15, 18). Plaintiff asserts the existence of each of these *Bremen* factors and each will be addressed in turn.

//

ORDER DENYING PRELIMINARY INJUNCTION – 5

*1.     Fraud or overreaching*

Plaintiff does not allege that Defendants engaged in any fraud in order to obtain his signature on the agreement. Rather, he argues that Defendants committed acts short of fraud which allegedly amount to the type of "overreaching" discussed in *M/S Bremen*. He argues that he did not substantially negotiate the forum-selection clause, did not fully understand its effect on his rights, and that Defendants exerted undue pressure against him in order to obtain his consent. (Pl.'s Reply 8-10.)

Plaintiff's argument that the forum-selection clause is unenforceable because it was not negotiated or that he did not fully contemplate the extent to which it might affect his rights has been rejected by both the Supreme Court and the Ninth circuit. In *Carnival Cruise Lines, Inc. v. Shute*, the Supreme Court enforced a forum-selection clause requiring passengers on a cruise ship to settle all disputes in Florida, even though the clause was never negotiated between the parties. 499 U.S. 585 (1991). The Ninth Circuit applied *Shute* to hold that "unequal bargaining power between the parties does not make a forum-selection clause unenforceable" in the context of a forum-selection clause in an employment contract requiring a long haul truck operator who lived in Oregon to litigate a dispute in Wisconsin. *Murphy v. Schneider National, Inc.*, 362 F.3d 1133, 1141 (9th Cir. 2004). Similarly, the forum-selection clause in this case would likely be held reasonable at trial even if it was never openly negotiated between the parties. Plaintiff entered into a contract with a Japanese company to participate in events that took place primarily in Japan. Given the centrality of that location to the contract and the potential cost-saving benefits of specifying a particular forum *ex ante* outlined in *Shute* and *Murphy*, it was entirely reasonable to contractually limit resolution of disputes to courts of that country.

Further, unlike the parties in *Shute* and *Murphy*, it seems that Plaintiff both had the power and business skills to negotiate a known and unambiguous forum-selection clause but simply chose not to do so. After all, it was Plaintiff —a professional athlete and former NFL player who likely had some experience in negotiating similar contracts—and not Defendants who asked that the parties create a written agreement in the first place. (First Sapp Decl. 3.) Presumably he did so because he understood the

ORDER DENYING PRELIMINARY INJUNCTION – 6

significance of the written document. He also admits that before signing the agreement he may have "glanced at" the specific provision of the contract (included in both the Fighting Agreement and the Exclusive Management Agreement) which unambiguously states on the signature page that "any disputes" arising under the agreements were governed by Japanese law and would have to be litigated in a Tokyo district court. Thus, even though the choice-of-forum provision may not have been the subject of back-and-forth discussion, it likely was a term in the contract about which the parties simply chose to agree.

Plaintiff's remaining argument on this first *M/S Bremen* factor is that he was induced to sign the agreement because of the elaborate signing ceremony. This argument is wholly without merit, as the mere existence of an elaborate ceremony fails to demonstrate that Defendants somehow overpowered Plaintiff's will or otherwise engaged in illegitimate coersion.

   2. *Effective deprivation of Plaintiff's day in court due to severe inconvenience.*

Plaintiff's assertion of the second *M/S Bremen* factor, whether enforcement of the forum-selection clause would be so inconvenient that it would deprive him of the ability to meaningfully litigate his dispute, is meritless. Plaintiff bases this argument on the fact that he lives in the United States and is now seeking domestic employment.

Plaintiff primarily fought in Japan, contracted with a Japanese company, and even flew to Japan to sign the contract which contained the forum-selection clause. That he now finds it inconvenient to return to Japan to litigate his dispute does not meet the "heavy burden of proof" required for such convenience-based challenges, *M/S Bremen,* 407 U.S. at 17. After all, this is not a situation where "two Americans [agree] to resolve their essentially local disputes in a remote alien form," *see id*, but is a dispute centered in Japan in which one party happens to be American. Accordingly, the forum-selection clause will not be held unenforceable for reasons of Plaintiff's inconvenience.

   3. *Enforcement would contravene a strong public policy*

Plaintiff contends that enforcement of the forum-selection clause would contravene public policy.

ORDER DENYING PRELIMINARY INJUNCTION – 7

The policy he points to is the "public policy against contracts mixing the role of managers and promoters" found in the Muhammad Ali Boxing Reform Act, 15 U.S.C. § 6301-13. The Act to which Plaintiff refers is an attempt to regulate the domestic boxing industry and in no way implies an intent by Congress to regulate fighting around the globe. Further, to the extent there is any such public policy with regard to regulation of international fighting, this Court declines to exercise its discretion to invalidate a forum-selection clause, the enforcement of which serves important public policy goals of its own. *See M/S Bremen*, 407 U.S. at 12-13; *Fireman's Fund Ins. Co. v. M.V. DSR Atlantic*, 131 F.3d 1336, 1338 (9th Cir. 1997) (holding that the deprivation of the right to proceed in rem in a foreign jurisdiction was insufficient to overcome the public policy in favor of enforcing forum-selection agreements).

* * *

Plaintiff has not been able to overcome *M/S Bremen*'s presumption in favor of the enforceability of a forum-selection clause, and thus cannot demonstrate a fair chance of success on the merits. This is especially true because of the higher scrutiny given to preliminary injunctions that aim to upset the status quo while providing substantially all of the relief that would be available after a decision on the merits. Accordingly, the Court need not address the remainder of Plaintiff's arguments regarding the validity of the specific contractual provisions or any potential problems due to lack of formal service of process.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for a Preliminary Injunction is hereby DENIED.

SO ORDERED this 10th day of January, 2007.

John C. Coughenour
United States District Judge

ORDER DENYING PRELIMINARY INJUNCTION – 8